The State v. Bishel.

## THE STATE v. BISHEL.

1. **Practice in the Supreme Court:** APPEAL: ABSTRACT. Errors assigned upon instructions not set out in the printed abstract, will not be considered by the Supreme Court.

2. **Criminal law:** GAMBLING: EVIDENCE. Where it appeared that defendant kept a house where games were played for the use of the table or of the instruments of gaming, and for beer, oysters, or cigars, it was *held*, that this constituted an offense under Section 4363 of the Revision.

3. ———: ———: ———. Testimony which tended to show that the offense was customarily committed, and with the knowledge and permission of defendant, was held to be competent.

4. ———: EVIDENCE: COMPETENCY. Evidence which tends to show the commission of the offense charged in the indictment, and to associate the defendant with it, is competent.

*Appeal from Mitchell District Court.*

FRIDAY, JUNE 19.

THE defendant is indicted under Section 4363 of the Revision, for keeping a house resorted to for the purpose of gambling. On a trial by jury he was convicted and sentenced to pay a fine of one hundred dollars and costs; from which judgment he appeals.

*L. M. Ryce,* for appellant.

*M. E. Cutts, Att'y Gen.,* for the State.

MILLER, CH. J.—I. Appellant has furnished us with an abstract of the evidence in the case, but as it contains none of the instructions given or refused, not even those of which complaint is made, we cannot therefore consider errors assigned thereon, but must confine our examination to the questions contained in the abstract.

*1 PRACTICE; appeal; abstract.*

II. The principal ground of complaint is that the evidence does not support the verdict; that the acts proved do not constitute the crime charged in the indictment.

The evidence shows that the defendant was a saloon-keeper, and had been in the saloon business for nearly a year prior to the finding of the indictment; that he kept in his saloon a sort of table upon which was played a game called "pigeon-hole;" that persons were in the habit of resorting to the place and playing on this table, sometimes for beer, sometimes for oysters, and sometimes for the cigars. It also appears by the evidence that in such playing it was the understanding that the person who lost the game should pay for the beer, oysters, or cigars, whichever they were playing for, and that it was so done. It further appears that the losing party was to, and generally did, pay for the use of the table. It is argued that these acts do not constitute the crime of gambling under the statute.

The section of the statute under which the indictment is drawn (Rev. § 4363) is as follows: "If any person keep a house, shop or place, resorted to for the purpose of gambling; or permit or suffer any person in any house, shop or other place under his control or care, to play at cards, dice, faro, roulette, equality, or other game for money or other thing, such offender shall be fined," etc. The indictment charges that the defendant "did keep a house and place which was then and there under his care and control, and did then and there permit Edwin Edwinsen, and divers other evil disposed persons whose names are to the grand jury unknown, to resort there for the purpose of gambling, and did permit and suffer said Edwin Edwinsen and the said divers other evil disposed persons * * to play at dice, billiards, pigeon-hole and other games, for

*2. CRIMINAL LAW; gambling; evidence.*

money, cigars, beer, whisky, gin and other things," etc. Now, it is quite clear that the playing at any game named in this indictment for beer, oysters or cigars, as the proof shows was done in this case, constitutes an offense under the statute. We need not decide whether simply playing with the understanding or agreement that the loser should pay for the use of the table or instrument of the game, would or would not, come within the statute, since it requires no argument to show that beer, oysters, and cigars were played for with the understanding that the loser should pay for them. This was as much gaming, under the law, as if the stakes played for had been money instead of beer, oysters, and cigars.

There is no question as to the proof that the defendant kept the house where the playing was done. It shows that he personally had charge and control thereof, and there is no room for doubt on the evidence that he permitted the gaming charged and proved.

On the trial, the District Attorney asked a witness to " state what was the custom there about parties playing for such 4. ——. evidence: competency. things " as beer, cigars, etc. This was objected to by appellant's counsel as incompetent and immaterial, but the court overruled the objection, and the witness testified as follows: " I generally played for a glass of beer or cigars—just as we played; sometimes took one, sometimes another. This was not very often. I had only been in there sometimes—sometimes once a week, sometimes only once a month. Suppose I have played a couple of games a day, when there, sometimes but one; when we played we went to the bar and had beer or cider. Generally defendant tended the saloon; he has been present in the saloon when I was playing." This, and the further testimony of the witness, which is of the same character, was clearly admissible as both competent and material—tending to show that unlawful gaming was practiced in the house, and that it was with the knowledge and permission of the defendant.

We find no error in the record, and the judgment must be

AFFIRMED.